Cite as 2020 Ark. App. 307

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-19-941

|  |  |
|---|---|
| MICHAEL A. THOMAS<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** May 13, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-18-2394]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Michael A. Thomas appeals the sentencing order entered by the Pulaski County Circuit Court convicting him of rape and sentencing him as a habitual offender to forty years' imprisonment. Michael's sole argument on appeal is that the circuit court erred in denying his motions for directed verdict. We affirm.

The evidence presented at trial reveals that on March 27, 2018, sixteen-year-old BK came home from school to an apartment in which her family—her mother (Pamela Bonds), her four younger siblings, and her mother's boyfriend (Terrell[1])—were living with her aunt (Kimberly Bonds) and her family—Kimberly's four children, BK's grandmother, and Kimberly's boyfriend (Michael). BK testified that her aunt was asleep in her bedroom, her siblings and cousins were running around, and Michael was in the living room "messing" with

---

[1]Terrell's last name is not in the record.

the TV. BK sat down on the couch in the living room, covered herself with a blanket, and was playing with her phone when Michael told the children to go play outside. Then, Michael started "playing around" with BK by taking her blanket. She told him she did not want to "play," and he pulled her leggings and panties down. She said she tried to push him off her and to stand up, but Michael turned her around using both of his hands, pushed her face into the couch, grabbed both her hands behind her back, and inserted his penis into her vagina for a couple of seconds. BK stated that when Michael released her, he "ran to the back" of the apartment, and she went to the bathroom. BK testified that she could not scream during the assault because her face was in the couch but that she was making some noises and crying.

BK stated that she told her younger sister, TB, about the incident but did not tell anyone else. BK said that a couple weeks later her mother told her to come home from school, where BK found her mother, her aunt, TB, and Michael waiting for her. BK's mother asked if the incident with Michael was consensual, and BK answered no. BK stated that there was "arguing, screaming, and hollering" thereafter, and her aunt told BK and her family they had to move out. BK stated that her grandmother took her to the hospital in May for an examination and that she was interviewed by the police at that time.

Pamela, BK's mother, testified that in April, TB told her that Michael had been touching her and that he had raped BK. Pamela told her sister, Kimberly, and together they confronted Michael. Pamela said that Michael denied the rape accusation but later said the encounter was consensual. When Pamela told Michael that he was going to be in trouble, he became upset and wanted to fight BK. Pamela said that Kimberly told them to move out.

Kimberly testified that on April 13, she asked Pamela and her family to move out after an unrelated confrontation had occurred between Michael and Terrell the day before. Kimberly said Pamela left the apartment to cash a check, and when she returned, she made the rape accusation against Michael, which he denied. According to Kimberly, when BK returned home from school that day, Michael told BK he did not do anything to her, but BK said, "[Y]es, you did." Kimberly said that "everybody was fussing and wrestling around," and finally Pamela left with her family. Kimberly testified that she did not believe BK's accusation against Michael and that there is no way the rape could have happened with so many people in the home, including BK's grandmother who had had a stroke, cannot walk, and stays on the living-room couch all day. Kimberly also stated that she did not think she and Michael were home in March at the time BK claims the assault occurred.

On this evidence, the jury convicted Michael of rape by forcible compulsion pursuant to Arkansas Code Annotated section 5-14-103 (Supp. 2017), and the circuit court sentenced him to forty years' imprisonment. On appeal, Michael argues that the State failed to present substantial evidence to support the conviction. He contends that the only evidence presented by the State in support of the rape charge is the testimony of BK and that her description of the incident is insufficient. He contends that there was no corroborating evidence of any kind—no medical evidence, no injury, no bleeding, no bruising, no DNA evidence, and no third-party witnesses. He argues that BK did not immediately tell anyone about the alleged incident and that she did not talk to the police or go to the hospital until approximately forty-three days after the alleged incident had occurred. Finally, he argues that

3

BK's testimony that she could feel both of his hands holding her hands behind her back is insufficient evidence of forcible compulsion.

We cannot reach the merits of Michael's argument on appeal because it is not preserved. Arkansas Rule of Criminal Procedure 33.1 provides in pertinent part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of all of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.
>
> . . . .
>
> (c) . . . A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. . . .

Ark. R. Crim. P. 33.1(a), (c) (2019). Rule 33.1 is to be strictly construed. *Carey v. State*, 365 Ark. 379, 383, 230 S.W.3d 553, 556 (2006). Accordingly, in order to preserve a challenge to the sufficiency of the evidence, an appellant must make a specific motion for a directed verdict, both at the close of the State's case and at the end of all the evidence, that advises the circuit court of the exact element of the crime that the State has failed to prove. *Id.*, 230 S.W.3d at 556. The reason underlying the requirement that specific grounds be stated and that the absent proof be pinpointed is that it allows the circuit court the option of either granting the motion or, if justice requires, of allowing the State to reopen its case and supply the missing proof. *Id.* at 383–84, 230 S.W.3d at 556. A general motion that merely asserts that the State has failed to prove its case is inadequate to preserve the issue for appeal. *Id.* at 384, 230 S.W.3d at 556.

At the close of the State's case, counsel for Michael moved for a directed verdict:

DEFENSE COUNSEL: I move for directed verdict, Your Honor.

THE COURT: What—for—on what grounds?

DEFENSE COUNSEL:     They have not met their burden of proof.

. . . .

THE COURT:     All right. The motion for directed verdict is denied.

After the defense rested its case, Michael's counsel renewed the directed-verdict motion:

PROSECUTOR:     Do you want to renew your motion for directed verdict?

DEFENSE COUNSEL:     I suppose so, Your Honor.

THE COURT:     . . . Okay. Go ahead.

DEFENSE COUNSEL:     Same thing, Your Honor. I think the Prosecutor's case was not proved appropriate—not sufficiently for the jury to rule in their favor.

. . . .

THE COURT:     Yeah. That's going to be for the jury to decide. So your motion will be denied.

These motions for directed verdict do not comply with Rule 33.1. The motions were general and lacked any mention of the specific element or elements of the crime that the State may have failed to establish. Because these motions were general and not specific, Michael failed to preserve his insufficiency claim for appeal. *Carey*, 365 Ark. at 384, 230 S.W.3d at 557. Accordingly, we affirm.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*The Hudson Law Firm, PLLC*, by: *Grace Casteel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.